IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CARREA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-CV-762-BLW-LMB (PC) |
| | ) | |
| vs. | ) | **SCREENING ORDER OF** |
| | ) | **FIRST AMENDED COMPLAINT** |
| H. ISERMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Chief United States District Judge B. Lynn Winmill earlier issued an Initial Review

Order directing Plaintiff Christopher Carrea (Plaintiff) to file an amended complaint in order to

clarify his claims.  Pursuant to that Order, a First Amended Complaint was filed on May 4, 2009.

(Docket No. 14).  The Court now reviews the First Amended Complaint to determine whether

summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court also

reviews Plaintiff's Motion for Sanctions.  (Docket No. 17.)  Having reviewed the record, and

otherwise being fully informed, the following Order is entered, permitting Plaintiff to proceed on

some but not of his claims and denying Plaintiff's motion for sanctions.

### REVIEW OF AMENDED COMPLAINT

The Court is required to review prisoner and *in forma pauperis* complaints seeking relief

against a governmental entity or an officer or employee of a governmental entity to determine

whether summary dismissal is appropriate.  28 U.S.C. §§ 1915(e) and 1915A.  The Court must

dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to

state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

**SCREENING ORDER AMEND. COMPLAINT- 1**

who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

Plaintiff bring his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

### A.     Factual Allegations

In order to fully understand all of Plaintiff's grievances, a summary of all of his complaints will be set forth in this section.  Plaintiff alleges that on or about May 1, 2007, he filed a lawsuit in the United States District Court, Southern District of California, CV07-0809, and that the court staff attempted to contact him in July 2007.  He alleges that Defendants State of California Department of Corrections and Rehabilitation (CDCR) and its Secretary, Matthew Cate, refused to give Plaintiff his mail from the court in violation of his rights under the First Amendment.

Plaintiff further alleges that from July 2007 to the present, Defendants have continued to refuse to give him his mail and have opened his legal mail outside of his presence.   Plaintiff further alleges that Defendants have a long history of destroying and losing the mail of inmates in deliberate indifference of inmates' First Amendment rights.

Plaintiff further alleges that his First Amendment right to access the courts was denied. He alleges that he suffered an actual injury in *Carrea v. San Diego County et al.*, Case No. CV07-809-H-AJB (S.D. Cal.), when Defendants refused to allow him into the law library. Plaintiff filed CV07-809 on May 3, 2007.  The court issued an order on August 15, 2007, denying Plaintiff's motion for leave to proceed *in forma pauperis* and dismissing the case

**SCREENING ORDER AMEND. COMPLAINT- 2**

without prejudice.  Plaintiff was ordered to either resubmit his *in forma pauperis* application

with a certified copy of his prison trust account or pay the full $350 filing fee within 45 days.

The order specified that failure to comply with the order would result in the case remaining

closed.

Plaintiff alleges that Defendant Hillery Iserman (Vice Principal of Education at

Jamestown, California), Defendant Captain Overstreet (Sierra Conservation Center Captain), and

Defendant Mitch Lidenbaum (Senior Librarian at the Sierra Conservation Center) refused him

access to the law library on the bases that (1) he was not allowed access in the first 70 days of

arriving at the facility, and (2) that he must have and/or they must confirm that he has a GED

before gaining access to the law library.  Plaintiff states that he provided proof that he has a high

school diploma, as well as two GEDs, but was still refused access, or sufficient access, to the

library.

Plaintiff alleges that the denial of access to the library caused him to be unable to submit

documentation in support of his *in forma pauperis* status and then later to be unable to file an

appeal in his Southern District Court.  He further alleges that he informed the defendants of his

pending court case and need to file an appeal, and that they nonetheless denied his access to the

library under the false ground that they "had to be sure" the Plaintiff possessed a GED.

Plaintiff further alleges that these Defendants would not allow Plaintiff adequate time in

the library, and that when he requested time in the library, Defendants began to retaliate against

him and harass him by filing "all kinds of false things and even had the Plaintiff beaten by one of

there [sic] direct employees."  Plaintiff also alleges that Defendants directed another inmate to

attack him, an incident which occurred in the library on June 27, 2008 (one year after the

**SCREENING ORDER AMEND. COMPLAINT- 3**

incident described above).  It is unclear whether these statements describe one or two incidents.

Plaintiff alleges that Defendant Overstreet further retaliated against him by filing false charges of "Mutual Combat" after the beating.  Plaintiff alleges that Defendants Deputy Warden Chavez and Deputy Warden Smith were aware of Defendants Iserman's and Overstreet's denial of access and harassment, and approved of both, and that Defendant Chavez "continued the justification" and threatened Plaintiff.

Plaintiff further alleges that Defendant Dale Orth (Mill and Cabinet Instructor for Sierra Conservation Center, Jamestown, California) and Defendant Lieutenant Knigge (Sierra Conservation Center) worked with the other Defendants in denial of Plaintiff's access to the library and failed to prevent the other Defendants' denial of Plaintiff's  constitutional rights. Defendant Iserman assigned Plaintiff to Defendant Orth's Mill and Cabinet vocational class with knowledge that Defendant Orth was an avowed racist; that Defendant Orth discriminated against Plaintiff and showed racial animus toward him by refusing him access to the law library and by issuing false Rule Violation Reports against Plaintiff.

Specifically, Plaintiff alleges that Defendant Orth filed charges against Plaintiff on October 12, 2007, for being late to his work assignment even though Defendant Orth knew that another prison official had released Plaintiff late.  Plaintiff's documentation submitted with his Amended Complaint shows that he  was found "not guilty" because the other prison employee testified that he had in fact released Plaintiff late.  Plaintiff alleges that at the hearing on the rules violation, he was instructed by Sergeant Stone (the Hearing Officer), Sergeant McGee, and Defendant Overstreet to report to medical rather than to work in order to prevent further rules violations.

**SCREENING ORDER AMEND. COMPLAINT- 4**

Plaintiff further alleges that on April 1, 2008, he had three medical appointments and a library pass and that he had been told by Correction Officer Carillo and other corrections officers within the vocational unit not to report to vocational education on a day when he had multiple medical appointments in order to avoid a "revolving door."  Plaintiff alleges that Defendant Orth had retaliated against him numerous times, and that Plaintiff made a "602 complaint" against him.  Plaintiff alleges that in retaliation for that 602 complaint, Defendant Orth filed a 115 Rule Violation against him for "refusal to return to work" on April 1, 2008.  Plaintiff alleges that Defendant Orth knew that Plaintiff had a "medical ducat" and a library pass, and could not return to work on that day due to the Policy and Custom that inmates who have more than one medical appointment in a day may not return to a vocational assignment.  He further alleges that in order to ensure a successful result at the hearing, Defendant Orth provided the hearing officer with new cabinets.

Plaintiff alleges that Defendant Knigge (the Hearing Officer), refused to allow Plaintiff to talk or to present witnesses or evidence (specifically medical and vocational rehabilitation records) against him, and failed to include Plaintiff's full list of requested witnesses in the Rules Violation Report.  According to the Rules Violation Report attached to the Amended Complaint, Defendant Knigge found Plaintiff guilty of evading attendance at his assigned work program. Plaintiff was assessed 30 days of lost privileges, including A1-A Night yard privilege and Friday visits for 90 days; counseling; and a reprimand.  The rules violation was reduced to "Administrative" due to "Progressive Discipline".

Plaintiff also includes allegations and a request for relief based on what appears to be some alleged incorrect records of convictions against him for first degree burglary, accessory to

**SCREENING ORDER AMEND. COMPLAINT- 5**

a gun charge and terrorist threats.  In particular, according to the documentation Plaintiff

submitted with his Complaint, his criminal history record from the State of California,

Department of Justice, Record Information & Services Program, failed to reflect that certain

convictions had been reversed on appeal, but was amended on or before April 25, 2008.   (*See*

Section B.4. below.) Plaintiff cryptically alleges that as a result, Defendant Chavez has "stated"

that Plaintiff's crimes have "increased in severity" and that he has been "P" coated which

appears to be some type of treatment associated with "fire camps" given only to inmates with

serious felony charges.

Based on the foregoing allegations, Plaintiff seeks general, specific, and punitive

damages in the total amount of $700,000.  He also seeks an order of injunctive relief that

Defendants stop harassing and beating him, that each Defendant take a course regarding the

importance of constitutional and civil rights, and that the State of California stop "listing

convictions that he does not have."

**B.**     **Review of Defendants and Claims Made Against Them**

1.     <u>State of California Department of Correction and Rehabilitation</u>

In *Hans v. Louisiana*, 134 U.S. 1 (1890), the Supreme Court held that the Eleventh

Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state.

The Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to

states and state entities "regardless of the nature of the relief sought."  *See Pennhurst State Sch.*

*& Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  As a result, Plaintiff's is not authorized to

proceed on his claims against the State of California Department of Correction and

Rehabilitation (CDCR).

**SCREENING ORDER AMEND. COMPLAINT- 6**

2.        CDCR Secretary Matthew Cate

Plaintiff alleges that CDCR Secretary Matthew Cate violated his rights on the grounds

that Cate is the official responsible for inmates receiving mail.  Cate is the head of the entire

CDCR.[1]

In *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989), the court outlined the requirements for a

finding of proximate causation:

> Liability under section 1983 arises only upon a showing of personal
> participation by the defendant.  *Fayle v. Stapley*, 607 F.2d 858, 862 (9th
> Cir.1979).   A supervisor is only liable for constitutional violations of his
> subordinates if the supervisor participated in or directed the violations, or
> knew of the violations and failed to act to prevent them. There is no
> respondeat superior liability under section 1983.

*Id*. at 1045.

Plaintiff's allegations against Defendant Cate are insufficient to state a claim for relief for

damages because he has no allegations showing that the head of the CDCR is personally

involved with Plaintiff's mail or that he participated personally in the alleged deprivation of

mail.   Therefore, Plaintiff is not authorized by law to proceed against Defendant Cate.

3.        First Amendment Right to Send and Receive Mail

It is well established that Plaintiff, as a prison inmate, retains the First Amendment right

to send and receive mail.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[W]ithholding

of inmate mail must be accompanied by . . . minimum procedural safeguards."  *Krug v. Lutz*, 329

F.3d 692 (9th Cir. 2003).

---

[1]  *See* http://www.cdcr.ca.gov/About_CDCR/cate.html.

**SCREENING ORDER AMEND. COMPLAINT- 7**

Plaintiff alleges that Defendants CDCR and Secretary Cate interfered with and specifically refused to give him mail from another district court regarding another pending lawsuit.  As discussed above, Plaintiff may not bring these claims against the CDCR, and the allegations against Defendant Cate are insufficient for failure to allege facts demonstrating that Cate personally participated in the alleged violations.  In addition, it is unclear whether Plaintiff failed to receive only one letter or multiple letters.  A careful review of the record demonstrates that there are also no allegations showing that the problems with Plaintiff's mail was due to purposeful conduct as opposed to mere negligence.  Plaintiff may not proceed on this First Amendment claim absent a motion and  a proposed second amended complaint containing additional specific factual allegations addressing these deficiencies and naming appropriate defendants.

4.      Claims Based on Incorrect Information About Convictions

Attachments to Plaintiff's Amended Complaint show that prior to April 25, 2008, the State of California Bureau of Criminal Identification and Information possessed an incorrect State Summary Criminal History for the Plaintiff.  The summary apparently failed to reflect that certain convictions had been reversed on appeal.  The documentation further suggests that the summary was amended by April 25, 2008, and that copies of the amended summary were forwarded to the Prison Litigation/Coordinator at the Sierra Conservation Center, Jamestown. Nonetheless, Plaintiff's Amended Complaint contains vague allegations suggesting that Plaintiff believes that the information maintained by the State of California is still incorrect, and that he has suffered some consequence involving Defendant Deputy Warden Chavez.

**SCREENING ORDER AMEND. COMPLAINT- 8**

An allegation that a person's prison records are erroneous may amount to a cognizable Fourteenth Amendment due process liberty interest claim in certain limited circumstances. The United States Court of Appeals for the Fourth Circuit held that expungement of wrongful records in parole files can arise to the level of a due process violation if an inmate requests that the State correct the records, but it refuses to do so. *See Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979). However, under *Paine*, an inmate must establish that (1) erroneous information is in his file; (2) the information is false; and (3) the information either has been or could be relied upon to a constitutionally significant degree. *Paine*, 595 F.2d at 201.

More recently, the United States Court of Appeals for the Fifth Circuit determined that *Paine* is no longer controlling in jurisdictions where the parole statutes *do not* establish a liberty interest in parole. *See Johnson v. Rodriguez*, 110 F.3d 299, 309 n.13 (5th Cir. 1997). However, the Ninth Circuit has determined that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). The three-part *Paine* test has been applied to constitutional claims based on incorrect prison records generally, and not just parole records. *See, e.g., McCrery v. Mark*, 823 F.Supp. 288 (E.D. Pa. 1993).

Plaintiff in this case has failed to set forth sufficient allegations in his complaint to meet the *Paine* test. As mentioned above, he has not alleged whether false information is still in his file and if so, has it in fact been relied upon "to a constitutionally significant degree." "[S]peculation that the false information will be used to his detriment at some future date is insufficient under *Paine* to trigger an inmate's entitlement to–and a prison administrator's obligation to direct–the expungement of the supposedly false information." *Id.* at 293. Plaintiff

**SCREENING ORDER AMEND. COMPLAINT- 9**

may not proceed on this claim, but must submit a second amended complaint if he has additional factual allegations meeting the *Paine* test.

Plaintiff also alleges that the errors contained in his prison records have endangered his safety. These allegations can be liberally construed as an Eighth Amendment claim for failure to prevent harm to Plaintiff. To state an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, that conduct violates the Eighth Amendment. *Id.*, 511 U.S. at 828. "Deliberate indifference" requires a showing that the official was "subjectively aware of the risk." *Id.* at 829.

Plaintiff's allegations regarding the incorrect information contained in his criminal records are ambiguous. It is not clear to whom the allegations are directed, if the incorrect information is still contained in and/or being used by any particular defendant to Plaintiff's harm or detriment, or whether Plaintiff has suffered, or is at risk of suffering, harm or a danger to his safety as a result. Nor has Plaintiff alleged that prison officials or any defendants have failed to remove the incorrect notations as a result of deliberate indifference to his safety. In addition, it is unclear whether any of the defendants alleged acts or conduct occurred within the applicable statute of limitations period. If Plaintiff has any such allegations he may file a motion to amend and set forth such additional facts. Presently, he is not authorized to proceed on a claim that the errors in his prison records have endangered his safety because he has failed to allege sufficient facts to state a claim upon which relief can be granted.

**SCREENING ORDER AMEND. COMPLAINT- 10**

5.      Access to Courts Claim

Plaintiff alleges that his constitutional right to access the courts has been denied from October 7, 2007, through the date of the filing of the Complaint because Defendants denied him access to the law library.

There is no freestanding right to access a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). However, an inmate has a constitutional right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an *actual injury* occurred as a result of the denial. *Lewis v. Casey*, 518 U.S. at 352-53. The right to access the courts is a limited one, aimed at ensuring that prisoners may initiate legitimate petitions challenging their criminal convictions and complaints alleging civil rights violations. *See id.* at 354.

Here, Plaintiff alleges that he was denied access to the law library and was unable to submit documentation in support of his *in forma pauperis* status, and, as a result, his lawsuit, Case No. CV07-809, was dismissed. Plaintiff further alleges that he informed these Defendants that he needed to file an appeal due denial of *in forma pauperis* status, but was unable to do so.

It appears from the docket of the Southern District Court, of which this Court takes judicial notice, that Plaintiff's case was dismissed without prejudice because Plaintiff failed to file a certified copy of his prisoner trust account statement or pay the $350 filing fee within the required time period. Plaintiff may proceed on this portion of his access to courts claim against Defendants Hillery Iserman, Captain Overstreet, and Mitch Lindenbaum.

**SCREENING ORDER AMEND. COMPLAINT- 11**

6.    Equal Protection Claim

Plaintiff alleges that his right to equal protection has been violated because Defendants would not allow him adequate time in the law library to complete his legal work as a result of a racial animus, subjecting him to deprivations not imposed upon white inmates.  Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities.  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). The Ninth Circuit has held that § 1983 claims based on Equal Protection violations "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution.  *See, e.g., City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 440 (1985).

While Plaintiff has stated that he suffered from racial discrimination, which is an element of an equal protection claim, the remainder of his allegations are too vague for him to proceed. It is unclear when such harassment occurred and what action constituted the harassment.  The only clear allegation is that Defendants had another inmate attack him, but Plaintiff includes no factual allegations that would provide a causal link between Defendants and the attack, as described directly below.  Plaintiff will have to articulate more clearly his specific factual

**SCREENING ORDER AMEND. COMPLAINT- 12**

allegations against each Defendant in a motion for leave to amend if he wishes to file an amendment to proceed on an equal protection claim based on these alleged wrongs.

       7.    <u>Eighth Amendment Harassment Claim</u>

Plaintiff alleges that Defendants Iserman, Overstreet, and Lindenbaum harassed him by directing another inmate to attack him, which occurred on June 27, 2008.[2]  He further alleges that Defendants Deputy Warden Chavez and Deputy Warden Smith were aware of Defendant Iserman and Overstreet's harassment, and approved of both, and that Defendant Chavez "continued the justification" and threatened Plaintiff.

Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  The United States Supreme Court has recently reiterated that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety."  *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002) (internal citations and punctuation omitted.  Further, in *McKune v. Lile*, 536 U.S. 24, 41 (2002), the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not."

Here, Plaintiff has failed to allege any facts showing a connection between Defendants and the incident in which the inmate allegedly attacked Plaintiff.  It does not appear that Plaintiff

---

      [2]  Plaintiff also alleges that an employee attacked him at the behest of these defendants. The Court assumes this is the same alleged attack and attacker, but that is not clear from the First Amended Complaint.

**SCREENING ORDER AMEND. COMPLAINT- 13**

raised these allegations at the hearing on the beating incident.  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context[,] . . . [a]nd Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, . . . and expect his complaint to survive . . . dismiss[al]".  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953-54 (2009).

Plaintiff may not proceed on this claim unless in a motion accompanied by an amendment he comes forward with more specific factual allegations showing how and when Defendants directed and approved of this action.

        8.      <u>First Amendment Retaliation Claim</u>

Plaintiff alleges that Defendants Iserman, Overstreet, and Lindenbaum retaliated against him because of his requests and demands to use the law library by directing another inmate to beat him up.  Plaintiff further alleges that Defendant Overstreet further retaliated against Plaintiff by filing a false Rules Violation Report based on the incident.

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  A "chilling effect on First Amendment rights" is enough to state an injury.  *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

Plaintiff's allegations state a colorable retaliation claim under the First Amendment upon which he may proceed against Defendant Overstreet regarding the filing of false Rules Violations Reports, but he may not proceed on the claim that Defendants directed another inmate

**SCREENING ORDER AMEND. COMPLAINT- 14**

to attack

him without additional factual allegations supporting a causal link between Defendants and the

inmate.

      9.      <u>Fourteenth Amendment Due Process Violations Based on Disciplinary Action</u>

      Plaintiff alleges that on April 1, 2008, Defendant Orth charged Plaintiff with a false rule

violation, and at the hearing Defendant Knigge later denied Plaintiff various procedural due

process rights including the right to call or confront witnesses against him and to present

evidence in his defense.  Plaintiff further claims that on April 1, 2008, he had three medical

appointments and was required to report to medical once in the early morning and once later in

the morning.  He also claims that he was given a library pass on the same date, which he used

while waiting in between appointments because of the prison Policy and Custom that an inmate

assigned to vocational education may not come and go for multiple medical appointments on the

same day.

      Plaintiff further alleges that he was nonetheless charged with a Rule violation for failing

to report to his work assignment on that day.  He further alleges that in connection with the Rule

violation hearing, he was denied the right to call witnesses, to confront witnesses, and to present

medical records in support of his defense. He further alleges that Defendant Knigge failed to list

on the Rules Violation Report all of the witnesses which Plaintiff had requested to call, but

Plaintiff does not specify which witnesses are missing or the purpose of their testimony.

      Due Process requires that a prisoner charged with a disciplinary violation have the

following minimum protections: "(1) advance written notice of the charges, (2) an opportunity to

**SCREENING ORDER AMEND. COMPLAINT- 15**

call witnesses provided there is no conflict with institutional safety and correctional goals, and (3) a written statement outlining the evidence relied on and the reasons for the disciplinary action." *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  In *Ponte v. Real*, 471 U.S. 491, 498, 500 (1985), the Supreme Court held that prison officials could not simply deny an inmate the right to call witnesses at a disciplinary hearing without adequate explanation.  *Id*.  However, such due process violations arising from prison disciplinary actions are not always cognizable.

Only claims involving a "liberty interest" are actionable.   In *Sandin v. Conner*, 515 U.S. 472, 487 (1995), the Court examined whether a prisoner had a liberty interest in not being confined in disciplinary segregation.  There, the Court held that, in order for a district court to determine whether there is such a liberty interest, it must analyze three factors:  (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation; (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected.  *Id*., 515 U.S. at 486-87.  If these factors are not met, a court may find that there is no liberty interest in not being placed in disciplinary segregation, which results in a prisoner not being entitled to sue prison officials for due process violations arising from the disciplinary hearing.

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court underscored the severity of the conditions required to meet the liberty interest test:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room.  Save perhaps for the especially severe limitations on all

**SCREENING ORDER AMEND. COMPLAINT- 16**

human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OPS is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F.Supp. 2d at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, supra at 483.

*Id*. at 224-25. In *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997), *cert. denied*, 522 U.S. 921 (1997), the Ninth Circuit determined that pre-hearing administrative segregation does not constitute an "atypical and significant hardship," explaining that such placement "falls within the terms of confinement ordinarily contemplated by a sentence."  *Id*. at 565.

The only exception to *Sandin* is that a prisoner may challenge a prison disciplinary action where an inmate has been found guilty of an offense without "a shred of evidence," because inmates have a Fourteenth Amendment substantive due process right to be free from punishment which is arbitrary and capricious. *See Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (due process was violated when a prison disciplinary hearing board convicted an inmate of escape after that board held a hearing at which no shred of evidence of the inmate's guilt was presented, even if inmate demonstrated no cognizable liberty interest).

In this case now before the Court, regardless of whether Plaintiff's procedural rights were actually violated, he states no cognizable liberty interest. Plaintiff lost 30 days of privileges, was ineligible for Friday visits for 90 days and received counseling and a reprimand regarding "Work performance and procedures for medical ducats." *Amend. Cmplt.*, Exh. B, at p. 3. The disposition of his disciplinary action does not invoke any of the three aforementioned factors for determining a liberty interest. *Sandin*, 515 U.S. at 486-87.

**SCREENING ORDER AMEND. COMPLAINT- 17**

However, because Plaintiff alleges that his rule violation conflicts with another prison rule set forth in Policy and Custom, Plaintiff may bring a claim for being subject to arbitrary and capricious punishment under the exception to a *Sandin* liberty interest requirement.  *See Burnsworth,* 179 F.3d at 775.  Accordingly, this claim will be allowed to go forward on that basis.

**C.      Instructions for Filing Motion For Leave to Amend**

Plaintiff has two options: (1) file a motion to amend and a second amended complaint within thirty (30) days of receipt of this Order, or (2) submit supporting documents necessary to proceed against the current five Defendants against whom he is now authorized to proceed (Defendants Orth, Knigge, Overstreet, Iserman and Linderbaum) within (30) days of receipt of this Order.

If Plaintiff wishes to file a motion for leave to amend consistent with the Court's rulings above, he shall simultaneously submit his proposed second amended complaint with his motion for leave to amend, which the Court shall order filed if the amendment is granted.  Because Plaintiff's prior complaints have been vague and the allegations have been difficult to understand, the Court will require Plaintiff to be very clear in his second amended complaint. Plaintiff shall organize the second amended complaint by causes of action, with a separate page devoted to each defendant and to each cause of action for which the defendant is being sued.  For example, if one defendant is sued for three different causes of action, Plaintiff's second amended complaint should contain three separate pages for that defendant - one for each cause of action against that defendant.

**SCREENING ORDER AMEND. COMPLAINT- 18**

For each cause of action alleged against each defendant, the plaintiff shall state the following: (1) the name of the person who personally participated in causing the alleged deprivation of his constitutional rights if the claim is for monetary damages against a defendant in his/her personal capacity,[3] **or**, the name of the person who has authority over the policy at issue and who could effectively issue orders within the prison if the court were to rule in plaintiff's favor if the claim is for injunctive relief against a defendant in his/her official capacity; (2) facts showing the person is a state actor or facts showing that a non-state actor conspired with state actors to violate Plaintiff's civil rights;[4] (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional provision Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met;[5] (6) the injury or damages Plaintiff personally suffered; and (7) the particular type of relief he is seeking from each defendant.

Plaintiff shall not include any claims in a second amended complaint that are vague and

---

[3] There are two theories under which a state official may be held liable for actions taken in his or her individual capacity: (1) personal involvement in the act that caused the injury; or (2) sufficient causal connection between the official's act or omission and the injury. There is no "respondeat superior" liability under § 1983, meaning that supervisors are not liable for their subordinate employees' actions simply because they are supervisors. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the state official did not have personal involvement in the alleged constitutional deprivation, then plaintiff must allege facts showing that the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Id.*, 880 F.2d at 1045.

[4] "Acting under color of state law" is different from being sued in one's "official capacity." "Acting under color of state law generally means that a person was working for or acting on behalf of a governmental entity. This is an essential element of a civil rights claim against defendants in either their official capacity (injunctive relief) or their personal capacity (monetary relief), meaning that either type of claim cannot proceed unless the plaintiff alleges that the defendant was acting under color of state law. Generally, this element is met if the plaintiff alleges the defendant's job title and the governmental entity for which he or she worked at the time of the alleged violation.

[5] For example, Plaintiffs must allege facts setting forth the elements of an Eighth Amendment claim or a First Amendment claim.

**SCREENING ORDER AMEND. COMPLAINT- 19**

conclusory.  *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If Plaintiff has properly exhausted his claims according to the California prison system

administrative grievance procedures, then Plaintiff should be able to review his copies of the

grievances and find the specific information needed to amend his claims to state a claim.

However, if Plaintiff failed to exhaust his administrative remedies under the grievance

procedures, any further claims he does file may later be subject to dismissal, *see Wyatt v.

Terhune*, 315 F.3d 1108 (9th Cir. 2003); therefore, he should not include unexhausted claims

in any second amended complaint.

      If Plaintiff chooses not to file a motion for leave to amend his complaint again, he will be

allowed to proceed on only those claims set forth above in this order for which he has been

allowed to proceed.

**PLAINTIFF'S MOTION FOR SANCTIONS**

      Plaintiff filed a motion entitled "Application For A Court Order to Sanction the

Defendants and Their Attorney Diana Esquivel, Deputy Attorney General" (Doc. No. 17.)

Plaintiff requests that sanctions be issued against the Defendants Iserman and  Lindenbaum, and

their attorney of record, Deputy Attorney General Diana Esquivel, because these individual

defendants are attempting to communicate with Plaintiff about the facts of this lawsuit outside of

the presence of their attorney.

      There is no *per se* prohibition against one party to a lawsuit speaking to another party in a

lawsuit.  For this reason, Plaintiff's motion is denied.  However, Plaintiff characterizes some of

the communications from staff as "harassment."  While Defendants are not entitled to harass

Plaintiff about the lawsuit, it is unclear here whether Defendants' actions constitute harassment.

**SCREENING ORDER AMEND. COMPLAINT- 20**

Defendants' attorney of record will be required to counsel with the Defendants regarding the circumstances of their communications with Plaintiff regarding this lawsuit to ensure that any of the communications they may have had with Plaintiff are appropriate, related to their responsibilities and not intended to harass or discuss matters pending this court action.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Sanctions (Docket No. 17) is DENIED.  However, Defendants' attorney of record is ordered to counsel with Defendants regarding the circumstances of their communications with Plaintiff to ensure that the communications with Plaintiff are appropriate as noted in the preceding section, and to file a Notice of Compliance with this Order within thirty (30) days of its filing.

IT IS FURTHER HEREBY ORDERED that Plaintiff may proceed **only** on the following claims against the following Defendants:

(1) First Amendment access to courts claim regarding dismissal of Case No. CV07-809 against Defendants Iserman, Overstreet, Lindenbaum, Orth, and Knigge;

(2) First Amendment claim against Defendant Overstreet regarding the filing of false Rules Violations Reports; and

(3) Fourteenth Amendment claim against Defendants Orth and Knigge that the rule violation conflicts with another prison rule set forth in Policy and Custom and is arbitrary and capricious.

IT IS FURTHER HEREBY ORDERED that the Clerk of Court shall send Plaintiff five (5) USM-285 forms, five (5) summonses, a Notice of Submission of Documents form, an instruction sheet, and a copy of the First Amended Complaint (Docket No. 14).

**SCREENING ORDER AMEND. COMPLAINT- 21**

IT IS FURTHER HEREBY ORDERED that Plaintiff shall take one of the following actions within thirty (30) days after receipt of this Order:

(1) simultaneously file a motion to amend and a second amended complaint, using the guidelines set forth above; **or**

(2) complete the Notice of Submission of Documents and submit to the Clerk of Court the completed Notice to the court with the following documents: (a) completed summonses, (b) completed USM-285 forms, (c) and six (6) copies of the endorsed First Amended Complaint.

IT IS FURTHER HEREBY ORDERED that failure to comply with this Order will result in a recommendation that this action be dismissed.

DATED:  **March 30, 2010**.



Honorable Larry M. Boyle
United States Magistrate Judge

**SCREENING ORDER AMEND. COMPLAINT- 22**